IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

|  |  |  |
|---|---|---|
| JUDY TALANA, | ) | CIVIL NO. 21-00426-SOM-KJM |
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| vs. | ) | ORDER DENYING PLAINTIFF'S |
|  | ) | MOTION FOR SUMMARY JUDGMENT |
|  | ) | AND GRANTING DEFENDANT'S |
| LIBERTY SURPLUS INSURANCE | ) | MOTION FOR SUMMARY JUDGMENT |
| CORPORATION, ET AL., | ) |  |
|  | ) |  |
| Defendants. | ) |  |
| _____ | ) |  |

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**I.        INTRODUCTION.**

This is an insurance coverage case.  In 2019, Judy Talana got into an accident with a car while operating a moped on Maui.  Talana now sues the car driver's insurance company, Liberty Surplus Insurance Corporation ("Liberty Mutual"), seeking a judicial declaration that the applicable liability limit is $1,000,000.  Both parties have filed summary judgment motions. The court concludes that Liberty Mutual is entitled to a judgment capping the liability coverage benefit at $50,000.  The court grants Liberty Mutual's motion for summary judgment and denies Talana's motion for summary judgment.

**II.        BACKGROUND.**

On September 19, 2019, Talana collided with a car while operating a moped in Maui.  *See* ECF No. 33-1, PageID # 148. Talana suffered severe injuries and incurred substantial medical

costs.  *See id*.  Two years later, Talana filed a declaratory judgment action in state court against Liberty Mutual, which had issued an excess insurance policy covering the car driver at the time of the crash.  *See* ECF No. 33-1, PageID # 143 (Business Auto Policy No. ASE-631-510574-018 ("the Policy")).  The car driver had rented the car from the car's owner, who was participating in a peer-to-peer car-sharing protocol run by a company called Turo.  The Policy covered not only the car driver but also the car owner, the car, and Turo.  *See* ECF No. 33-1, PageID # 144-45.[1]

Talana seeks a declaration by this court that the applicable liability coverage limit is $1,000,000.  *See* ECF No. 17, PageID # 79.  Liberty Mutual contends that the proper limit is $50,000, the limit set by the Policy for nonowner drivers such as the driver involved in the collision with Talana.  *See* ECF No. 33-1, PageID # 146-49.

Talana filed the original complaint on October 5, 2021.  Complaint, *Judy Talana v. Liberty Mutual Group Inc.*, *et al.*, Civil No. 2CCV-21-0000296 (Second Circuit, State of Hawaii (dkt. No. 1)).  Three weeks later, Liberty Mutual filed a Notice of Removal to this court.  *See* ECF No. 1.  Talana filed a First Amended Complaint on May 4, 2022.  *See* ECF No. 17.  Both parties

---

[1] The parties have stipulated to a series of facts to be used in addressing dispositive motions.  *See* ECF No. 33-1.  The stipulation forms the basis of this court's account of what occurred.

have filed summary judgment motions.  *See* ECF Nos. 32 & 35; *see also* ECF Nos. 41, 44, 46, & 47.

III.     **JURISDICTION**.

        Before turning to the merits of this action, the court examines its jurisdiction, with a focus on Talana's standing.

        The issue of subject matter jurisdiction is straightforward: the parties are diverse and the amount in controversy exceeds $75,000.  *See* ECF No. 1, PageID # 2-3.  Both parties agreed on this during the summary judgment hearing.

        However, the issue of standing is somewhat complicated. To demonstrate Article III standing, Talana must show (1) "an injury in fact," (2) "a causal connection between the injury and the conduct complained of," and (3) that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal quotation marks and citations omitted); *see also Winsor v. Sequoia Benefits & Ins. Servs., LLC*, No. 21-16992, 2023 WL 2397497, at *4 (9th Cir. Mar. 8, 2023). While this is the common test for determining Article III standing, it does not apply neatly in declaratory judgment actions, in part because the relief sought in such actions typically does not, on its own, compensate a plaintiff.  Such is the case here: even were Talana to obtain the judicial declaration he seeks, he would still have to prove that the car

3

driver was liable to him before he could obtain the Policy benefits in issue.

Recognizing the nature of declaratory judgment actions, the Supreme Court has articulated differently the standard for assessing constitutional standing in this context.  A plaintiff seeking a declaratory judgment satisfies the requirement of constitutional standing when "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  *See MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (*quoting Maryland Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).

Talana's action satisfies this standard, as both parties agreed at the hearing.  Talana and Liberty Mutual have a substantial controversy (they disagree about the liability coverage limit), have adverse legal interests (both would be financially affected by a court ruling in the other's favor), and the conflict is sufficiently real and immediate.

But Talana's constitutional standing leaves the court with the issue of whether he has prudential standing.  *See Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 471 (1982) ("'standing' subsumes a blend of constitutional requirements and prudential

4

considerations").

Liberty Mutual argues that Talana lacks standing because he is not a party to the Policy. *See* ECF No. 32-1, PageID # 133-34. This could be reframed as a challenge to Talana's prudential standing. *See, e.g.*, *Warth v. Seldin*, 422 U.S. 490, 509 (1975) (classifying the rule against third parties "asserting the rights or legal interests of others" as an element of prudential standing). However, some courts instead construe this kind of challenge as arising under the real-party-in-interest analysis in Rule 17(a) of the Federal Rules of Civil Procedure. *See, e.g.*, *Knopick v. Jayco*, *Inc.*, 895 F.3d 525, 529 (7th Cir. 2018) (viewing the question of whether the plaintiff was the proper party to bring a claim as "an issue of the real party in interest under Rule 17"). Other courts view this kind of challenge as substantive in nature, requiring analysis of the merits as to whether a plaintiff has a cause of action under the relevant contract or statute. *See, e.g.*, *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 (2014) (concluding that whether a party can properly bring a claim under a statute is not a matter of prudential standing, but rather a question on the merits, requiring statutory interpretation); *see also Lindsey v. Starwood Hotels & Resorts Worldwide Inc.*, 409 F. App'x 77, 78 (9th Cir. 2010) ("Whether a plaintiff possesses legally enforceable rights under a contract is a question on the

merits rather than a question of constitutional standing.").

These approaches are not necessarily in tension. They may be treated as overlapping or as iterations of each other. *See, e.g., Pyramid Transp., Inc. v. Greatwide Dallas Mavis, LLC*, No. 3:12-cv-0149-D, 2013 WL 3834626, at *2 (N.D.Tex. July 25, 2013) ("[The Rule 17(a)] requirement is in essence a codification of the prudential standing requirement that a litigant cannot sue in federal court to enforce the rights of third parties."). Other sources view the approaches as distinct. *See, e.g.*, 7 Alan Wright, et al., *Federal Practice & Procedure* § 1702 (3d ed.) ("plaintiff must both be the real party in interest and have standing").

All of this reflects the unresolved nature of the relationship between prudential standing, Rule 17(a), and merits-based questions about who has a cause of action under a contract or statute. In *Lexmark*, the Supreme Court brought some clarity to this area of law, but chose not to directly address third-party standing. *Lexmark*, 572 U.S. at 127 n.3 ("This case does not present any issue of third-party standing, and consideration of that doctrine's proper place in the standing firmament can await another day.").

Perhaps because of the state of this area of law, the parties have been somewhat unclear about the kind of inquiry implicated by Liberty Mutual's challenge to Talana's standing.

6

In its briefs, Liberty Mutual did not indicate what kind of standing is implicated here.  *See* ECF No. 32-1, PageID # 133-34; ECF No. 46, PageID # 323-24.  At the hearing, both parties struggled to categorize the standing challenge, with Talana conceding that he did not know how to classify it and Liberty Mutual describing it as implicating both prudential standing and substantive contract law.

This court need not decide precisely how to construe Liberty Mutual's standing challenge.  Rather, having already established that Talana has Article III standing, this court can bypass the murky question of prudential standing and proceed directly to the merits.  *See Env't Prot. Info. Ctr.*, *Inc. v. Pac. Lumber Co.*, 257 F.3d 1071, 1076 (9th Cir. 2001)*; see also Gianfrancesco v. Town of Wrentham*, 712 F.3d 634, 638 (1st Cir. 2013) ("although we may never bypass a question of constitutional standing to reach the merits of a case, the same is not true of prudential standing limitations") (citation omitted); *Grubbs v. Bailes*, 445 F.3d 1275, 1281 (10th Cir. 2006) ("Questions relating to prudential standing, however, may be pretermitted in favor of a straightforward disposition on the merits.").

This court proceeds to analyze the merits of Talana's claim, relying on the plain language of the contract, which controls in this instance.

IV.        **LEGAL STANDARD.**

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment shall be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

Summary judgment must be granted against a party that fails to demonstrate facts to establish what will be an essential element at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A moving party has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment. *See Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir.2000).

On a summary judgment motion, inferences may be drawn from underlying facts not in dispute, as well as from disputed facts that the judge is required to resolve in favor of the nonmoving party. *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).

Here, there are no genuine issues of material fact. This court's decision hinges on whether either party has established that it is entitled to judgment as a matter of law.

V.        DISCUSSION.

          A.    **The Policy Provision Applying a $50,000
                Liability Coverage Limit to Certain Insureds
                is Clear and Unambiguous.**

          Talana concedes that, under the Policy's plain

language, the liability limit applicable to nonowner drivers is

$50,000.  *See* ECF No. 36, PageID # 199.  Talana argues, however,

that notwithstanding that express Policy language, the court

should rule as a matter of statutory interpretation or public

policy that the higher coverage limit of $1,000,000 applicable to

the car owner also applies to the car driver.  *See* ECF No. 35,

PageID # 177.

          "[S]o long as [an insurance] policy is clear and

unambiguous, and not in contravention of statutory inhibitions or

public policy, the insurance policy should be enforced on its

terms."  *Foote v. Royal Ins. Co. of Am.*, 88 Haw. 122, 125, 962

P.2d 1004, 1007 (Ct. App. 1998), *citing Dawes v. First Ins. Co.

of Haw.*, 77 Haw. 117, 121, 883 P.2d 38, 42 (1994).[2]  Talana does

not disagree that the relevant provisions of the Policy are clear

and unambiguous.  Instead, he seeks to show that statutory

inhibitions and public policy support an interpretation of the

---

          [2] Because this case is before the court based on diversity
jurisdiction, the court looks to state law to resolve the merits
of this dispute.  *See Snead v. Metro. Prop. & Cas. Ins. Co.*, 237
F.3d 1080, 1090 (9th Cir. 2001) (stating that federal courts
sitting in diversity apply state substantive law and federal
procedural law).

contract that is directly at odds with the Policy's express language.

Talana makes a number of arguments to support his position, but the court is unpersuaded by any of them. Accordingly, the court denies his motion.

Liberty Mutual, by contrast, establishes that, based on the record before the court, it is entitled to judgment as a matter of law.  Its motion is hereby granted.

### B.    Talana Has Not Shown That Any State Law Precludes the Policy's $50,000 Liability Coverage Limit for Nonowner Drivers.

The Policy before the court is not the typical car insurance policy purchased by a car owner who intends to use the car for personal transportation.  The Policy was instead purchased by Turo in contemplation of the need for protection when a car was "shared" by being offered by a car owner as a rental to others as part of a modern-day peer-to-peer car-sharing program.

Talana says the Policy unlawfully differentiates between a nonowner driver like the car driver in Talana's accident, who had a $50,000 liability limit, and the car owner, who had a $1,000,000 liability limit.  *See* ECF No. 35-1, PageID # 190.  According to Talana, this difference violates state laws that emphasize the primary nature of a vehicle owner's policy. *Id.*  This argument fails for two reasons.

10

First, state laws concerning policies issued to car owners have no bearing here because the Liberty Mutual Policy was not issued to a car owner.  The Policy is an excess insurance policy, *see* ECF No. 33-3, PageID # 161, issued to Turo, a company that did not own the insured vehicle, *see* ECF No. 33-3, PageID # 152.  Talana asserts that the Policy is constructively a primary policy, akin to a policy purchased directly by a car owner.  *See* ECF No. 44, PageID # 312 ("The policy issued by Liberty Mutual is meant to . . . provide primary insurance coverage").  But that mere assertion does not suffice to render the Policy anything other than an excess policy issued to a company that did not own the insured car.

The key cases Talana relies on, *Budget Rent-Car Sys., Inc.v. Coffin*, 82 Haw. 351, 922 P.2d 964 (1996), and *Bowers v. Alamo Rent-A-Car, Inc.*, 88 Haw. 274, 965 P.2d 1274 (1998), are inapposite.  They involve insurance policies issued directly to vehicle owners.  Indeed, the holdings in these cases are premised on the special place that such policies have under state law. *Bowers*, 88 Haw. at 281, 965 P.2d at 1281 ("this does not alter our holding that the dominant public policy of HRS Chapter 431:10C is that vehicle owners are primarily responsible for providing minimum coverage for their owned vehicles"); *Coffin*, 82 Haw. at 355, 922 P.2d at 968 ("As is borne out by the legislative history . . . the legislature intended HRS § 431:10C-104 to speak

11

to the obligation of owners of motor vehicles"). These cases, and the state laws they implicate, pertain to policies issued to car owners and have no bearing on the Policy limit dispute before this court.

Second, even if this Policy were equated with a primary policy issued to a vehicle owner, the laws Talana refers to would not prohibit Liberty Mutual from assigning different limits to different parties. Under Article 10C of Hawaii's Insurance Code, an owner's insurance policy is primary in most circumstances. *Bowers*, 88 Haw. at 281, 965 P.2d at 1281; *see, e.g.*, Haw. Rev. Stat. § 431:10C-104. Talana argues that, therefore, under any given policy, all liability limits must be equal to the limit applicable to the owner. *See* ECF No. 35-1, PageID # 190 ("Since Hawaii law mandates that the owner's insurance is primary, language in the Policy that attempts to limit coverage to the $50,000 applicable to the driver is void"). But the second proposition does not follow from the first. State laws that require an owner's policy to be primary do not speak to whether different insureds can be assigned different liability coverage limits. Talana's counsel acknowledged, during the hearing, that he could not point to any authority providing that a driver could claim an owner's higher limit. If Hawaii's legislature had intended for any of its laws to prevent policies from including differential coverage limits, it could have so provided. Nothing

12

in the language of state statutes or their legislative history suggests such an intent.  Talana's assertion that state law requires liability coverage limits to be equal for all insureds is a logical leap unsupported by state law.

> **C.   Talana Has Not Shown That Having
> Different Liability Limits for
> Different Insureds is Contrary to Public Policy.**

Talana also argues that the differential Policy limits are void as contrary to public policy.  *See* ECF No. 35-1, PageID # 190.  However, Talana presents no evidence that Hawaii's public policy disfavors insurance contracts setting different liability limits for different parties.[3]

The cases in Talana's brief shed no light on the

---

[3] Talana appears to have also made a separate, but related argument, that the $50,000 coverage limit offends public policy because it is too low.  *See* ECF No. 35-1, PageID # 194 (arguing that a recently enacted law recognizes that "substantially higher coverage limits are in the interest of the public").  If Talana is indeed making this argument, it is unsuccessful.  There is no question that the Policy's $50,000 liability limit satisfied the relevant provisions of the Insurance Code.  That is, $50,000 was more than the minimum required by Hawaii law both at the time the Policy issued and when the accident occurred.  *See* ECF No. 33-1, PageID # 147; *see also* Haw. Rev. Stat. § 431:10C-301.  This court has no basis for ruling that a contract provision wholly in line with statutory requirements somehow violated public policy.  The legislature has expressed the state's public policy with respect to automobile insurance requirements.  *See Progressive Gulf Ins., Co. v. Faehnrich*, 752 F.3d 746, 753 (9th Cir. 2014)("The Legislature expresses the relevant public policy in the motor vehicle and insurance statutes it passes."); *State v. Harada*, 98 Haw. 18, 50, 41 P.3d 174, 206 (2002) (Acoba, J., concurring and dissenting) (quotation omitted) ("'[N]either the courts nor the administrative agencies are empowered to rewrite statutes to suit their notions of sound public policy where the legislature has clearly and unambiguously spoken.'").

relevant question.  The decision in *Bowers*, 88 Haw. 274, 965 P.2d 1274, concerns the primary nature of a car owner's insurance policy.  It does not speak to whether an owner's coverage limit should be applied to all others insured under the Policy.

Nor is Talana's reference to Act 56, the recently enacted insurance law applicable to peer-to-peer car-sharing companies, helpful here.  Act 56 was not in effect at the time of Talana's accident.  Moreover, Act 56 contains no indication that the different coverage limits in the Liberty Mutual contract are contrary to public policy.[4]  It is true that Act 56 raised the required minimum coverage amount and set equal minimum coverage limits for all insureds.  Haw. Rev. Stat. § 431:10C-802.  But that alone does not demonstrate that there is a public policy against differential coverage maximums.  Uniform statutory minimums for all parties does not suggest that the maximums must also be uniform.[5]

---

[4] Although Act 56 is inapplicable to the Policy, this court recognizes that, as Talana contends, recently enacted statutes can in theory shed light on the correct interpretation of older statutes.  *See* ECF No. 35-1, PageID # 193 (*citing Bowers*, 88 Haw. at 282, 965 P.2d at 1282).  But that light cannot obliterate preexisting provisions that are clear.  *See Dannenberg v. State*, 139 Haw. 39, 49, 383 P.3d 1177, 1187 (2016).  The relevant Insurance Code provisions are clear and unambiguous in their discussion of minimum liability coverage limits.  *See* Haw. Rev. Stat. § 431:10C-301(b).

[5] One could imagine a policy that included a higher limit for the driver than it did for the owner.  If Talana is asserting that the owner's limit always trumps any other limit, then in that situation the driver's limit would be reduced to match that

To succeed on his motion, Talana must show that statutory inhibitions or public policy invalidate the Policy's coverage limits.  He fails to meet his burden.  The court agrees with Liberty Mutual that no authority prohibits auto insurance policies from assigning different limits to different insureds. Because Talana fails to show his entitlement to judgment as a matter of law, the court denies his motion for summary judgment.

### D.   **Liberty Mutual's Motion for Summary Judgment.**

The question remains whether Liberty Mutual is entitled to judgment as a matter of law.  To grant Liberty Mutual's motion, it is not enough for the court to conclude that its legal arguments are superior to Talana's.  Rather, the court must determine whether, under Talana's version of facts, there is a viable legal theory that could entitle Talana to judgment as a matter of law.  *See Bushie v. Stenocord Corp.*, 460 F.2d 116, 119 (9th Cir. 1972); *see also Ameripride Servs., Inc. v. Valley Indus. Servs., Inc.*, No. 2:00-CV-113-MCE-EFB, 2016 WL 3753267, at *9 (E.D. Cal. July 13, 2016).  If there is, the court must deny Liberty Mutual's motion.  *Id.*

The relevant facts here are uncontested, and Talana lacks a viable legal theory with which he could secure judgment

---

of the owner.  Nothing in the state's public policy demands such a result.

as a matter of law.  The court therefore grants Liberty Mutual summary judgment.

**VI.        CONCLUSION.**

No material facts are genuinely in dispute and Liberty Mutual has demonstrated that it is entitled to judgment as a matter of law limiting liability coverage to $50,000.  The court denies Talana's motion for summary judgement and grants Liberty Mutual's motion for summary judgment.

The Clerk of Court is directed to enter judgment for Defendant and to close this case.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, March 24, 2023.



/s/ Susan Oki Mollway
Susan Oki Mollway
United States District Judge

*JUDY TALANA v. LIBERTY SURPLUS INSURANCE CORPORATION, ET AL.,* CIVIL NO. 21-00426 SOM-KJM; ORDER DENYING THE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT.